IN THE DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CHARLES K. SMITH,

Defendant.

CRIMINAL CASE NO. 10-00043

**REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE**

Pending before the court are a petition and supporting declaration (together, the "Violation Petition") filed on May 21, 2021, a Supplemental Declaration filed on November 8, 2022, and a Second Supplemental Declaration filed on November 21, 2022. *See* ECF Nos. 104, 122 and 128. Together, these documents allege the Defendant committed the following violations of his supervised release conditions:

1. Admitted to the use of "meth" on March 8, 2021, and tested positive for the use of methamphetamine on November 6, 2022;

2. Failed to submit monthly supervision reports for March and April 2021;

3. Failed to inform the probation officer about a change in his residence; and

4. Failed to report for eight (8) drug tests (April 7, 9, 16, 19 & 20, 2021 and May 3, 10 &17, 2021);

5. Terminated from the Lighthouse Recovery Center's ("LRC's") residential treatment program on November 7, 2022, based on his non-compliance; and

6. Failed to follow the instructions of the probation officer.

On June 8, 2022, the Defendant admitted to allegations in the Violation Petition. *See* Minutes, ECF No. 111. On November 16, 2022, the Defendant entered admissions to the violations in the Supplemental Declaration, and he admitted to the allegation in the Second Supplemental

Declaration on November 22, 2022. *See* Minutes, ECF Nos. 127 and 129. Having heard argument from the parties, the court now issues this Report and Recommendation as to an appropriate disposition for the supervised release violations.

## BACKGROUND

### A. Conviction and Sentence

On July 12, 2012, the Defendant was sentenced by the Chief Judge to 120 months of imprisonment, with credit for time served, followed by eight years of supervised release for the offense of Distribution of Methamphetamine Hydrochloride.[1] *See* Judgment, ECF No. 45. As a mandatory condition of supervised release, the Defendant was ordered to "refrain from any unlawful use of a controlled substance. *Id.* at 3. Additionally, as a standard condition of supervision, the Defendant was ordered to "report to the probation officer in a manner and frequency directed by the court or probation officer." *Id.* Special condition of supervised release included that the Defendant "submit to one urinalysis test within 15 days of release from imprisonment and, to two or more urinalysis thereafter not to exceed eight tests per month" and "participate in a program . . . for substance abuse, which program shall include testing to determine whether the [D]efendant has reverted to the use of drugs or alcohol." *Id.* at 4.

The Defendant served his sentence and commenced his original term of supervised release on November 13, 2018. Petition for Warrant for Offender Under Supervision at 1, ECF No. 50.

### B. Post-Conviction Conduct

On June 7, 2019, the Probation Officer filed a Report on Offender Under Supervision (the "Informational Report"). *See* ECF No. 48. According to said report, the Defendant reported to the U.S. Probation Office on May 28, 2019, after failing to report for drug testing on May 27, 2019. He was subjected to a drug test, which was presumptive positive for methamphetamine, and the Defendant signed an admission form attesting that he used "meth on May 27, 2019. *Id.* at 2. Additionally, on June 4, 2019, the Defendant once again reported to the Probation Office after he

---

[1] The offense of conviction is a Class A felony because of the enhanced penalties resulting from his prior drug conviction.

failed to appear for drug testing on June 3rd. *Id.* He tested presumptive positive for methamphetamine, and he signed a written form admitting that he used "meth" on June 3, 2019. *Id.* The Defendant explained that he used methamphetamine on both days after experiencing personal stressors in his relationship. *Id.* The Probation Officer counseled him to refrain from the further use of controlled substances. The Probation Officer asked the court not to take any punitive action against the Defendant since he had been generally compliant with conditions and was gainfully employed. *Id.* On June 10, 2019, the court agreed to take no action against the Defendant. *See* ECF No. 49.

On March 12, 2020, the Chief Judge revoked the Defendant's supervised release term and sentenced him to time served (approximately 111 days), followed by 92 months of supervised release. *See* Revocation J., ECF No. 81. The basis for the revocation was the Defendant's admissions to failing to report for drug tests on 13 occasions, failing to provide a urine specimen on two occasions, failing to submit his monthly supervision reports for three months, testing positive for the use of methamphetamine once, and failing to attend drug counseling sessions five times. *Id.* and Report & Recomm., ECF No. 73. As a condition of supervised release, the Defendant was ordered to participate in a substance abuse treatment program,[2] to follow the rules and regulations of the program and to submit to drug testing. Revocation J. at 6, ECF No. 81.

On February 18, 2021, the Defendant's supervised release term was revoked a second time, and the Chief Judge sentenced him to time served (approximately six months and 12 days) and 85 months of supervised release. *See* Revocation J., ECF No. 101. The revocation was a resulted after the Defendant failed to report for six drug tests, admitted to the use of methamphetamine, and was terminated from the LRC residential program for possession of narcotics not prescribed by a physician. *Id.* and Report & Recomm., ECF No. 97.

**CURRENT VIOLATIONS**

**A.	Filing of Violation Petition**

On June 20, 2020, the Probation Officer filed the instant Violation Petition alleging the

---

[2] The Defendant was released from custody on February 25, 2020, for the sole purpose of participating the LRC residential program. *See* Order, ECF No. 77.

following violations:

### Use of methamphetamine

On March 10, 2022, the Defendant reported to the probation office for intake processing and was informed that he would be subjected to a drug test. The Defendant admitted that he had relapsed and signed a form admitting to the use of "meth" on March 8, 2021.

### Failure to submit monthly supervision reports

During his intake processing meeting with the probation officer, the Defendant was instructed to submit monthly supervision reports during the first five days of each month. The Defendant failed to submit reports for the months of March and April 2021.

### Failure to notify probation officer about change in residence

On March 24, 2021, the probation officer went to a residence in Yigo reported by the Defendant to be where he was residing. The probation officer noticed a realtor key box on the front doorknob of the security screen door. The probation officer attempted to contact the Defendant but was unsuccessful. The probation officer then called the homeowner by cell phone and asked whether the Defendant was residing in the Yigo residence. The homeowner responded "yes," and the officer asked the homeowner to have the Defendant contact his probation office upon the Defendant's return to the residence.

The probation officer conducted another home visit on May 12, 2021. A female individual appeared at the front window screen, and the probation officer asked whether the Defendant was residing there. The female individual stated she was not familiar with the Defendant's name since she just moved into the residence in late April 2021.

### Failure to report for drug testing

The Defendant was scheduled for drug tests at LRC on April 7, 9, 16, 19 and 20, 2021, and also on May 3, 10 and 17, 2021, but he did not report for testing. The Defendant also failed to report to and contact his probation officer after each missed test as required to discuss his noncompliance and to schedule a make-up drug test.

At the request of the probation officer, the court ordered that a warrant issue for the Defendant's arrest. *See* Order, ECF No. 106.

**B.      Arrest and Initial Appearance**

On June 2, 2022, the U.S. Marshals Service arrested the Defendant. *See* Return of Warrant, ECF No. 107.

On June 3, 2022, the Defendant appeared before the court, and the Federal Public Defender was appointed to represent him. *See* Minutes, ECF No. 108, and Appointment Order, ECF No. 109. Ms. Kottke asked for a brief continuance to discuss the matter further with the Defendant. Without objection, the matter was continued to June 8, 2022. The court ordered that the Defendant be detained pending the next hearing.

**C.      Admissions**

On June 8, 2022, the Defendant appeared in court and entered admissions to all the violations alleged against him in the Violation Petition. *See* Minutes, ECF No. 111. Ms. Kottke asked for a 90-day continuance for disposition arguments. Without objection, the matter was continued to August 11, 2022,[3] and the court ordered the Defendant to remain detained until the next hearing.

**D.      Subsequent Court Hearings**

On September 8, 2022, the parties appeared before the court. *See* Minutes, ECF No. 114. The probation officer and government recommended a sentence of 11 months' imprisonment and 74 months of supervised release. Ms. Kottke stated she was working really hard to get the Defendant into LRC's residential program, which was supported by the Defendant's counselor Chris Francisco. Ms. Kottke reported that although the Defendant has been assessed, LRC staff had not yet received the assessments for review. She suggested that the court continue the matter to see whether the Defendant could get into LRC. Without objection, the matter was continued to October 4, 2022.

On October 4, 2022, the parties again appeared before the court, *see* Minutes, ECF No. 115, and Ms. Lujan, on behalf of Ms. Kottke, requested a continuance. Without objection, the matter was continued to October 25, 2022,[4] and the Defendant was ordered to remain detained until the next

---

[3] This was later advanced to August 9, 2022, and then pushed back to September 8, 2022, at the request of defense counsel. *See* ECF Nos. 112-13.

[4] This hearing was later moved to October 27, 2022, and then to November 3, 2022. *See* ECF Nos. 117 and 120.

hearing.

E. **Release to LRC**

On November 3, 2022, the parties appeared before the court, and Ms. Kottke requested that arguments on disposition be put on hold because a bed space was available for the Defendant in LRC's residential program. *See* Minutes, ECF No. 121. The probation officer confirmed that a bed space was available for the Defendant. Without objection, the court ordered that the Defendant be released the following day (November 4, 2022) at 12 noon to participate in the residential program. The court also scheduled a status hearing for December 13, 2022.

F. **Filing of Supplemental Declaration and Issuance of Arrest Warrant**

On November 8, 2022, the probation officer filed a Supplemental Declaration, *see* ECF No. 122, alleging two additional violations of the Defendant's supervised release conditions as further described below.

<u>Non-compliant discharge from LRC</u>

When the Defendant entered the LRC program on November 4, 2022, he submitted to a drug test with negative results. He was subsequently tested again on November 6, 2022, and the results were presumptive positive for methamphetamine use. The Defendant was confronted, and he denied using illicit substances. The urine sample was sent for lab analysis, with results pending, but the Defendant was terminated from the program on November 7, 2022, by LRC staff.

<u>Failure to follow probation officer's instructions</u>

Prior to the Defendant leaving the LRC facility, Deputy Chief Grace Flores asked LRC staff to instruct the Defendant to report to the U.S. Probation Office on November 8, 2022, at 8:30 a.m. The staff confirmed that the Defendant was given the instruction, but the Defendant failed to report as instructed.

The probation officer requested that an arrest warrant issue, and the court granted the request on November 9, 2022. *See* Order, ECF No. 125.[5]

On November 14, 2022, the U.S. Marshals Service arrested the Defendant. *See* Return of

---

[5] Said Order also vacated the status hearing set for December 13, 2022.

Arrest Warrant, ECF No. 126.

**G.     Further Admissions and Filing of Second Supplemental Declaration**

On November 16, 2022, the Defendant appeared before the court and entered admissions to the two allegations contained in the Supplemental Declaration. *See* Minutes, ECF No. 127. The probation officer stated that he was still waiting to receive the lab report for the November 6, 2022 presumptive positive drug test. Without objection, the matter was continued to November 22, 2022, for arguments on disposition.

On November 21, 2022, the probation officer filed a Second Supplemental Declaration alleging that on November 18, 2022, he received the lab report for the Defendant's urine sample that tested presumptive positive on November 6, 2022, when the Defendant submitted to a drug test at the LRC. *See* ECF No. 128. The probation officer stated that the lab report confirmed the specimen was positive for methamphetamine.

On November 22, 2022, the parties again appeared before the court, and the Defendant entered an admission to the sole allegation in the Second Supplemental Declaration. *See* Minutes, ECF No. 129. Counsel and the probation officer presented their respective arguments as to an appropriate sentence for the violations. The court ordered that the Defendant continue to remain detained pending the final disposition before the Chief Judge. Having reviewed the record herein and considered the parties' recommended sanction, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Revocation is mandatory if a defendant refuses to comply with drug testing. *See* 18 U.S.C. § 3583(g)(3).

///

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Second Amended Violation Worksheet, the allegations are Grade C violations, with a guidelines range of 5-11 months of imprisonment based on the Defendant's criminal history category of III, followed by 74-80 months of supervised release. *See* Second Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 128-1.

This is the Defendant's third revocation proceeding. His underlying offense of conviction is a Class A felony, so the Defendant faces a maximum of five years' imprisonment for revocation proceedings, pursuant to 18 U.S.C. § 3583(e). His prior revocations resulted in sentences of about 111 days and six months and 12 days.

The probation officer asked the court to impose a sentence of 11 months' imprisonment, with credit for time served, and 74 months of supervised release. The probation officer believed his recommendation at the high end of the guidelines range was reasonable because this was the Defendant's third revocation proceeding and because the Defendant had been terminated again from the LRC residential treatment program for noncompliant behavior.

Defense counsel proposed what she called a "hybrid max-out sentence" and recommended that the court impose 24 months of imprisonment, with credit for time served, and no supervised release term to follow. According to Ms. Kottke, the Defendant was doing really well for a while until he got into a huge fight with his father, who subsequently passed away. Defense counsel asserted that was when the Defendant's relapse started. She claimed that the Defendant was struggling with homelessness, and his family was wary of letting him come back to the residence in light of his past argument with his father and because of his criminal past. Ms. Kottke stated that the Defendant's ultimate plan is to seek release in Texas, where he has family and friends and a son who resides in Arizona. Defense counsel claimed that aside from his mother, the Defendant only has negative contacts on the island, so he is hoping to relocate to the mainland where he has siblings and kids. She further stated that the Defendant was hopeful when he got into the LRC residential program, but things did not work out as he had hoped, and he was upset at himself for having used methamphetamine while at LRC because everyone worked so hard to get him into the program. Ms. Kottke argued that a hybrid max-out sentence of 24 months was appropriate because the

Defendant has no real plan or resources on island, and he is hoping to get his life back in order if discharged on the mainland, although she acknowledged that the Defendant struggles to find employment because of his federal felon status. Alternatively, if the court were not inclined to adopt her recommendation for a hybrid max-out sentence, defense counsel asked for a mid-range sentence of nine months' imprisonment, followed by a term of supervised release.

The United States concurred with the probation officer's recommendation. Counsel for the government argued that while defense counsel's recommendation is somewhat appealing, the Defendant needs an additional period of supervised release, whether it is here or somewhere in the mainland. Given the Defendant's violations, the government asserted that it would be improper to release the Defendant without any other period of supervised release. Ms. David urged the court to impose a supervised release term unless the Defendant received a true max-out sentence.

The court is not inclined to adopt defense counsel's hybrid max-out proposal. As previously noted by the court, the Defendant has a drug addiction which he simply can not overcome on his own. The Defendant received a lenient sentence for his first revocation proceeding in March 2020 so that he could participate in the LRC residential program. He was discharged from the program after about two months for possessing a controlled substance. This subsequently led to his second revocation proceeding in February 2021, when he was sentenced to a little over six months' imprisonment. The instant Violation Petition was filed within three months thereafter because the Defendant began committing new violations shortly after his release. A warrant for the Defendant's arrest was issued in May 2021, and he was not apprehend until June 2022. The Defendant had absconded from supervision for more than one year. The court ordered the Defendant detained following his arrest, but subsequently released him after about five months so that he could again participate in intensive treatment at LRC. The Defendant squandered this opportunity given to him within two days of his release by smoking methamphetamine. Based on his history, it would be irresponsible for this court to allow him to serve less than the maximum revocation sentence and be released without any further supervision or monitoring.

The probation officer and the government have proposed a sentence of 11 months' imprisonment, while the Defendant's alternative recommendation is for a nine-month imprisonment

term. As of the proposed disposition date, the Defendant would have served about 251 days of imprisonment, a little more than eight months. The Defendant is currently not receiving any substance abuse treatment while incarcerated, and whether the Defendant serves another month or three more months, he still will not receive any treatment while confined here on Guam. Accordingly, the court recommends a ten-month sentence, which will make him eligible for release in April, when he should be eligible to re-apply for the LRC program upon his release. While the Defendant has been given two prior opportunities at sorely needed residential treatment, the court is hopeful that he will take the next opportunity more seriously. Affording the Defendant with every opportunity to participate in substance abuse treatment gives him the best possible chance at sobriety. The court intends to closely monitor the Defendant's compliance upon his release. The court further notes that ten months of imprisonment is a graduated sanction from the previously imposed sentences and is reasonable, but not greater than necessary, to achieve the goals of just punishment and deterrence.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge accept the Defendant's admissions, revoke the Defendant's supervised release term, and sentence him to ten months' imprisonment, with credit for time served, followed by 76 months of supervised release.

A disposition hearing shall be held on February 16, 2023, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Jan 24, 2023

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**